859 So.2d 122 (2003)
David HENDERSON
v.
KINGPIN DEVELOPMENT COMPANY and Riddick Investments, Ltd.
No. 2001 CA 2115.
Court of Appeal of Louisiana, First Circuit.
August 6, 2003.
*124 S. Bradley Rhorer, Baton Rouge, for Plaintiff-Appellee David Henderson.
Richard P. Reina, Denham Springs, for Defendant-Appellant Kingpin Development Company.
Patricia Turner Riddick, Winston Wade Riddick, Baton Rouge, for Defendant-Appellant Riddick Investments, Ltd.
Before: PARRO, McDONALD, and JAMES,[1] JJ.
PARRO, J.
This is an action by a property owner, who was a third possessor,[2] to set aside a sheriff's sale of his property to the foreclosing *125 mortgagee and the subsequent sale to a purported good faith purchaser. For the following reasons, the trial court's judgment, granting summary judgment in favor of the third possessor, is affirmed in part, reversed in part, vacated in part, and remanded.

Factual Background and Procedural History
The factual background, as reflected in the pleadings filed of record in this case, is as follows. Jesse and Cynthia M. Juban were owners of a four-acre tract of land situated in Section 4, Township 7 South, Range 3 East, in Livingston Parish, when they executed an act of exchange relative to this land on August 13, 1986, in favor of Ted Ray Juban (Juban). The act of exchange incorrectly reflected that the property being transferred to Juban was situated in Section 9, as opposed to Section 4.
Juban also executed a promissory note and a collateral mortgage on August 13, 1986. The obligation evidenced by the promissory note was secured by the collateral mortgage. This mortgage was recorded on August 14, 1986. The mortgage identified the subject property as a four-acre tract situated in Section 9, but a referenced map that was allegedly attached to the mortgage document reflected the property's actual location in Section 4.
On April 23, 1996, David C. Henderson (Henderson) purchased from Juban the immovable property that is the subject of this lawsuit. The act of sale was recorded on April 24, 1996. At some point in time, Kingpin Development Company (Kingpin) apparently became the holder of the 1986 note secured by the 1986 collateral mortgage. On July 18, 1997, Kingpin filed a petition for executory process, seeking a writ of seizure and sale of the property given by Juban as security for the 1986 collateral mortgage. Juban was the only named defendant in Kingpin's petition, which identified the property as being situated in Section 9.[3] The trial court ordered the issuance of the writ on July 23, 1997.[4] Kingpin purchased Henderson's property at a sheriff's sale that was conducted in early 1998, without notice of such sale being given to Henderson. Subsequently, Kingpin sold the property to Riddick Investments, Ltd. (Riddick).
On August 4, 2000, Henderson filed a petition to set aside the sheriff's sale. As a basis for his attack on the sheriff's sale, Henderson argued the following: the invalidity of the mortgage based on the prescription of the underlying promissory note and the lack of timely reinscription of the mortgage; the sheriff's sale involved property described as being situated in Section 9; the lack of notice to the record owner of the property of the petition for executory process and the subsequent sheriff's sale; the lack of service on Juban of the citation in the petition for executory process; and the absence of authentic evidence to support the executory proceeding. In his petition, Henderson also sought a judgment declaring him to be the owner of the property in question free and clear of all encumbrances.
To Henderson's petition, Riddick and Kingpin separately filed peremptory exceptions raising the objections of no right of action and prescription. Riddick also filed a peremptory exception raising the objection of no cause of action. The trial court overruled all of these exceptions. Subsequently, Henderson filed a motion *126 for summary judgment, contending that there were no genuine issues of material fact and that he was entitled to the requested relief as a matter of law based on allegations questioning the viability of the mortgage and the lack of constitutionally mandated notice. In an affidavit attached to his motion, Henderson declared that he purchased the subject property from Juban on April 23, 1996, and recorded the act of transfer the following day. He further attested that he did not receive notice of the March 18, 1998 sheriff's sale.
Kingpin and Riddick opposed Henderson's motion for summary judgment on the basis that Henderson, a third possessor, failed to meet the requirements of LSA-R.S. 13:3886.1, which governs the rights of a third possessor who is not given notice of a sheriff's sale. They also asserted this statutory provision as support for their newly filed peremptory exception raising the objections of no cause of action and prescription. After considering the pleadings, evidence, and arguments of counsel, the trial court overruled Kingpin and Riddick's peremptory exceptions and granted Henderson's motion for summary judgment. The trial court ordered that the purported sheriff's sale of Henderson's property be set aside and declared Henderson to be the owner of the four-acre tract in question, free and clear of all claims of Kingpin and Riddick. From the judgment to that effect, Kingpin and Riddick appealed, contending that there were genuine issues of material fact that precluded summary judgment in this case. Furthermore, relying on LSA-C.C. art. 3315, LSA-C.C.P. art. 2703, and LSA-R.S. 13:3886.1, they argue that the trial court erred in denying their peremptory exception raising the objections of no cause of action and prescription. They also submit that the trial court erred in declaring Henderson to be the owner of the property free and clear of their claims based on Riddick's status as a good faith third-party purchaser.

Standard of Review
Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Jarrell v. Carter, 632 So.2d 321, 323 (La.App. 1st Cir.1993), writ denied, 94-0700 (La.4/29/94), 637 So.2d 467. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); Rambo v. Walker, 96-2538 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
When the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing that there is no genuine issue of material fact is on the party bringing the motion. LSA-C.C.P. art. 966(C)(2); Buck's Run Enterprises, Inc. v. Mapp Const., Inc., 99-3054 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431.

Notice Provisions in Executory Proceedings and LSA-R.S. 13:3886
Louisiana law provides two means of enforcing a conventional mortgageordinary *127 or executory proceedings. LSA-C.C.P. art. 3721. When a mortgage contains a confession of judgment, a person may enforce the mortgage through executory process, which is an action in rem. See LSA-C.C.P. art. 2631. The person must file a petition to enforce the mortgage, requesting the seizure and sale of the subject property. LSA-C.C.P. art. 2634. The court reviews the petition and supporting documents and, if the seizing creditor is entitled thereto, orders the issuance of a writ of seizure and sale, commanding the sheriff to seize and sell the property affected by the mortgage. See LSA-C.C.P. arts. 2635-2638. In general, the statutory scheme for executory proceedings includes no express requirements of actual notice to the defendant (debtor),[5] except that the sheriff is mandated to serve upon the defendant a written notice of the seizure of the subject property after the order has been signed. See LSA-C.C.P. art. 2721(B). The only other notice required is the advertisement of the sheriff's sale. LSA-C.C.P. art. 2722; Davis Oil Company v. Mills, 873 F.2d 774, 777-778 (5th Cir.), cert. denied, 493 U.S. 937, 110 S.Ct. 331, 107 L.Ed.2d 321 (1989).
If the original debtor or his legal successor has sold the property to a third person, the mortgage may nevertheless be enforced by executory process directly against the property, without regard to any sale or alienation of the property to the third person. LSA-C.C.P. art. 2701. In the case of executory proceedings, there is no statutory requirement that the present owner receive notice of the seizure. Small Engine Shop, Inc. v. Cascio, 878 F.2d 883, 885 (5th Cir.1989); see LSA-C.C.P. art. 2701.
An additional feature of the Louisiana statutory scheme for notice is the so-called request-notice provision contained in LSA-R.S. 13:3886. Under LSA-R.S. 13:3886, any person may obtain notice of the seizure of specific immovable property by paying a ten-dollar fee to the sheriff and by filing the request for notice of seizure, together with his or her name and address, in the mortgage records of the parish where the property is located. The act of requesting notice under LSA-R.S. 13:3886 allows one whose identity as an interested person may not otherwise be readily ascertainable to protect his or her interest in the subject property through a single, simple act. Davis Oil Company, 873 F.2d at 791. In other words, LSA-R.S. 13:3886 acts as a supplement to notice by publication, allowing otherwise unascertainable parties to make themselves known. Small Engine Shop, Inc., 878 F.2d at 889. It does not relieve the responsible state actor in a particular case from exercising the reasonable diligence appropriate in the circumstances to ascertain, reasonably, the identity of an individual or entity subject to the deprivation of his or its property. Small Engine Shop, Inc., 878 F.2d at 893 n. 9. Accordingly, a party with an interest in property does not waive its due process rights by failing to request notice under LSA-R.S. 13:3886. See Davis Oil Company, 873 F.2d at 787.

Failure to Give Notice (LSA-R.S. 13:3886.1)
Concerning the failure to give notice of seizure to a person having an interest in the property, LSA-R.S. 13:3886.1 provides:

*128 A. The failure to notify any lienholder or other interested person having an interest in the property shall not affect the rights of the seizing creditor nor invalidate the sheriff's sale; nor shall any lien, privilege, or other encumbrance that is inferior to the rank of the lien of the seizing creditor affect the property after the sheriff's adjudication. The exclusive remedy for any person affected by the provisions of this Subsection shall be to institute a claim by summary pleadings, within one year from the date of the sheriff's adjudication, proving that he has been damaged by the failure to notify him. In connection with any such claim, the court shall consider and the person claiming damages shall have the burden of proving all of the following:
(1) That his name and address were reasonably ascertainable through the exercise of reasonable diligence.
(2) That he lacked actual knowledge of the seizure.
(3) The respective ranking and amounts of all liens, privileges, and other encumbrances affecting the property as of the date of the sheriff's adjudication.
(4) The value of such respective rights.
(5) The value of the property as of the date of the sheriff's adjudication.
(6) The respective positions the parties would have occupied had the required notice been given.
(7) His ability and capacity to have obtained funds to purchase the property at the foreclosure sale had the required notice been given.
(8) That in such circumstances he would have bid on the property in such an amount as to have prevented him from suffering the alleged damages, either by such bid being successful or by such bid leading to a higher bid by another party.
B. In no event shall the claim of any such person exceed the value of the interest he possessed on the date of the sheriff's adjudication.
C. The provisions of this Section shall be applied both retrospectively and prospectively; however, any action for which the time period for bringing such action would otherwise be shortened by the provisions hereof shall be instituted within one year from July 17, 1991, and any suit not instituted within that time and any claims relating thereto shall be forever barred.
We note that LSA-R.S. 13:3886.1 has been found to be applicable to third possessors. See Matter of MHC Properties, Inc., 624 So.2d 977, 978 (La.App. 3rd Cir. 1993). Although the third possessor in that case had assigned as error the failure of the trial court to apply the due process requirements under the Fourteenth Amendment, that error was not briefed and was therefore considered abandoned. Matter of MHC Properties, Inc., 624 So.2d at 978. However, the appellate court found the third possessor had actual notice of the seizure and sale by virtue of service of the foreclosure proceedings on its president, director, and agent for service of process, who was present at the time of the sheriff's sale. Matter of MHC Properties, Inc., 624 So.2d at 979. Therefore, it appears procedural due process was in fact satisfied under the facts of that case.

Due Process Clause of the Fourteenth Amendment Versus LSA-R.S. 13:3886.1
The provision of the Fourteenth Amendment of the United States Constitution that no state shall deprive any person of life, liberty, or property without "due process of law," requires that deprivation *129 of life, liberty, or property by adjudication be preceded by notice and an opportunity for hearing appropriate to the nature of the case. See Mullane v. Central Hanover Bank & Trust Company, 339 U.S. 306, 70 S.Ct. 652, 656-657, 94 L.Ed. 865 (1950). Certainly, the seizure and sale of the subject property by the use of state foreclosure procedures deprived Henderson of a legally protected property interest within the meaning of the Fourteenth Amendment. However, the issue before this court is whether such action violated Henderson's constitutional right to procedural due process.
In Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the United States Supreme Court found that constructive notice of an impending tax sale was not sufficient to satisfy due process for a mortgagee who was identified in a mortgage that was publicly recorded. Mennonite, 103 S.Ct. at 2711. The court held that notice by mail or other means as certain to ensure actual noticeis a minimum constitutional precondition to a proceeding that will adversely affect the liberty or property interests of any party, if its name and address are reasonably ascertainable. Mennonite, 103 S.Ct. at 2712. A reviewing court must balance the interest of the state and the individual interest sought to be protected by the Fourteenth Amendment. The focus is on the reasonableness of the balance, and whether a particular method of notice is reasonable depends on the particular circumstances. Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565 (1988).
Kingpin and Riddick argue that the standards for notice established in Mennonite are inapplicable in this case, in that they apply only in cases involving tax sales. We disagree. However, the Louisiana Supreme Court in Magee v. Amiss, 502 So.2d 568 (La.1987), retroactively applied the standards for notice set forth in Mennonite to private foreclosure proceedings, implicitly finding that Louisiana's private foreclosure proceedings involve state action and implicate due process guarantees. Michael H. Rubin and E. Keith Carter, Notice of Seizure in Mortgage Foreclosures and Tax Sale Proceedings, 48 La. L.Rev. 535, 563 (1988). Accordingly, a seizing creditor who avails itself of Louisiana's foreclosure procedures is constitutionally obligated to provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action. Davis Oil Company, 873 F.2d at 788, citing Mullane, 70 S.Ct. at 657; see Bonner v. B-W Utilities, 452 F.Supp. 1295, 1300 (W.D.La. 1978). The decision in Mennonite sets forth a federal constitutional requirement; thus, its holding regarding standards for notice cannot be altered by a state statute such as LSA-R.S. 13:3886.1, and federal law is controlling in this circumstance. See Parkview Oak Subdivision Corporation v. Tridico, 95-0604 (La.App. 1st Cir.11/9/95), 667 So.2d 1101, 1104, writ denied, 96-0622 (La.5/19/96), 672 So.2d 921.

Identification of Third Possessor
The reasonableness of constructive notice in a particular case may turn on the nature of the property interest at stake and the relative ease or difficulty of identifying such interest holders from the land records and also on the existence of alternative means of insuring the receipt of notice. Davis Oil Company, 873 F.2d at 790. A third possessor has a number of rights that can be asserted effectively only if he is notified of foreclosure proceedings prior to a sale. Rubin and Carter, Notice of Seizure in Mortgage Foreclosures and Tax Sale Proceedings, 48 La. L.Rev. at *130 547; see LSA-C.C.P. arts. 2702, 2703, and 1092. When the name and address of a third possessor are known to the seizing creditor, the third possessor is entitled to more than constructive notice of the seizure of the subject property in a foreclosure by executory process. See Bonner, 452 F.Supp. at 1302. Although his identity may be unknown to the seizing creditor, a third possessor is entitled to notice by mail, or other means as certain as mail, to ensure actual notice if his name and address are reasonably ascertainable through the exercise of reasonably diligent efforts. See Mennonite, 103 S.Ct. at 2711-2712. Mennonite does not require actual notice to every party who has a publicly recorded interest in the subject property. Davis Oil Company, 873 F.2d at 790. However, if a third possessor's name and address could be found in a publicly recorded instrument after a reasonably diligent search, that person is reasonably ascertainable. See Rubin and Carter, Notice of Seizure in Mortgage Foreclosures and Tax Sale Proceedings, 48 La. L.Rev. at 569, citing Mennonite, 103 S.Ct. at 2708-2709.
Although it may be reasonable to draw some line limiting a seizing creditor's obligation to search land and conveyance records, Davis Oil Company, 873 F.2d at 790 n. 24, the burden of searching the conveyance records to determine whether Juban had transferred the property to a third possessor would not have been unreasonable under the circumstances of this case. Based on the allegations of record, a search of the conveyance records for the transfer to Henderson would have involved only a single search. Accordingly, we find that the exercise of reasonable diligence required that Kingpin search the conveyance records to ascertain the identity of a subsequent owner of the subject property.
If Henderson's name, identity as a third possessor, and address were readily ascertainable from the conveyance records of Livingston Parish, he was entitled to actual or mailed notice of the seizure and sale of the subject property. In an affidavit attached to his motion for summary judgment, Henderson declared that he purchased the property from Juban on April 23, 1996, and recorded the act of transfer the following day. He further attested that he did not receive notice of the March 18, 1998 sheriff's sale. However, the alleged act of sale from Juban to Henderson was not filed in the record, nor is there any information concerning the parties to the alleged act of sale in the record on appeal. Such information is crucial to a determination as to whether the exercise of reasonable diligence would have uncovered the identity of Henderson as a third possessor, as well as his name and address, before the sheriff's sale occurred in this case, so as to have entitled him to actual or mailed notice of the seizure.[6] Accordingly, we find that a genuine *131 issue of material fact exists in this case, and the trial court's grant of summary judgment was improper.

Decree
For the foregoing reasons, that portion of the trial court's judgment denying Kingpin and Riddick's peremptory exception is affirmed. In all other respects, the judgment is reversed and vacated, and this case is remanded for further proceedings not inconsistent with this opinion. The parties are responsible for payment of their own costs in connection with this appeal.
AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.
NOTES
[1] Judge A. Clayton James, retired from the Twenty-Second Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] A third possessor is one who acquires mortgaged property and who is not personally bound for the obligation the mortgage secures. LSA-C.C. art. 3315. One who acquires the mortgaged property without knowing of the mortgage, or who expressly takes it "subject to" the mortgage, but without assuming the principal obligation secured by the mortgage, is a third possessor. LSA-C.C. art. 3315, comment.
[3] Henderson, the record owner of the property in question, was not served with Kingpin's petition.
[4] Henderson never received notice of the order.
[5] The clerk of court is required to issue a demand for payment, which shall notify the defendant that, in default of payment within three days of service, exclusive of holidays, a writ of seizure and sale will be issued; however, the demand for payment need not be issued if it has been waived by the debtor in the act of mortgage. LSA-C.C.P. art. 2639.
[6] If Henderson's identity was known or reasonably ascertainable, then termination of his ownership interest without actual or mailed notice violated due process. In such a case, the lack of proper notice under the Fourteenth Amendment invalidated the sale, notwithstanding LSA-R.S. 13:3886.1, LSA-R.S. 13:4112, and LSA-R.S. 9:5622. See Magee, 502 So.2d at 572-573; Parkview Oak Subdivision Corporation, 667 So.2d at 1104; see also Smith v. Brooks, 97-1338 (La.App. 3rd Cir.4/15/98), 714 So.2d 735, 739 (holding that the failure to give notice of the tax delinquency and sale to the record owner rendered the tax sale an absolute nullity, notwithstanding the peremptive period set forth in LSA-Const. art. VII, § 25(C), in deference to the supremacy of the Fourteenth Amendment to the United States Constitution as interpreted in Mennonite). Thus, we find no error in the trial court's denial of Kingpin's and Riddick's peremptory exception raising the objections of no cause of action and prescription.