STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 1344

LADONNA ALLEN wife of/and GARY ALLEN

VERSUS

SOUTHWEST BUILDERS, L.L.C. and WARREN VOLLENWEIDER

Judgment Rendered:     **AUG 2 4 2023**

* * * * *

On Appeal from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
No. 2015-12812

The Honorable Richard A. Swartz, Judge Presiding

* * * * *

Willard O. Lape, III                    Attorney for Plaintiffs/Appellants
Covington, Louisiana                    Ladonna Allen wife of/and Gary Allen

Thear Jules Lemoine                     Attorneys for Defendant/Appellee
Taylor R. Lambert                       Maxum Indemnity Company
New Orleans, Louisiana

* * * * *

BEFORE: McCLENDON, HOLDRIDGE, AND GREENE, JJ.

**HOLDRIDGE, J.**

The plaintiffs/appellants, Ladonna Allen wife of/and Gary Allen (the plaintiffs) appeal the trial court's judgment that denied their motion for summary judgment and granted the defendant/appellee, Maxum Indemnity Company's (Maxum), cross motion for summary judgment, and dismissed the plaintiffs' claims with prejudice.[1] For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On July 15, 2015, the plaintiffs filed a petition for damages naming as defendants Southwest Builders, L.L.C. (Southwest) and its managing member, Warren Vollenweider. The plaintiffs owned immovable property located in St. Tammany Parish. In their petition, the plaintiffs alleged that on or about February 6, 2013, the plaintiffs entered into a construction contract with the defendants, wherein the defendants agreed to build a custom home for the plaintiffs for the sum of $515,566.00. The defendant, Warren Vollenweider, personally and directly supervised and controlled the workmen, subcontractors, employees, and independent contractors. The plaintiffs alleged that the work was not timely completed, was not done in "a good and workmanlike manner," and they also alleged that they incurred additional expenses in an attempt to alleviate the unsatisfactory work of the defendants. The plaintiffs listed in their petition a multitude of things that the defendants failed to do or completed in an unsatisfactory manner. The plaintiffs alleged that the negligence of the defendants was a cause in fact of their

---

[1] As part of their appeal, the plaintiffs contend that the trial court erred in denying their motion for summary judgment. Although the denial of a motion for summary judgment is an interlocutory judgment and is appealable only when expressly provided by law, where there are cross motions for summary judgment raising the same issues, as in this case, this court can review the denial of a summary judgment in addressing the appeal of the granting of the cross motion for summary judgment. **Waterworks District No. 1 of Desoto Parish v. Louisiana Department of Public Safety & Corrections**, 2016-0744 (La. App. 1 Cir. 2/17/17), 214 So.3d 1, 3, n.1, writ denied, 2017-0470 (La. 5/12/17), 219 So.3d 1103.

2

damages and that constituted a breach of contract and/or warranties under the New Home Warranty Act (NHWA).[2]

On May 10, 2018, the plaintiffs filed their "first supplemental and amending" petition, adding two new defendants, Maxum and State Farm Fire and Casualty Company (State Farm).[3] The plaintiffs alleged that through discovery they learned that Southwest subcontracted a portion of the labor to construct their home to subcontractors. They also alleged that Maxum issued multiple commercial general liability insurance policies to Southwest, wherein it agreed to indemnify Southwest and/or Warren Vollenweider for property damages arising out of work performed by the subcontractors of Southwest. Thus, the plaintiffs argued that they were entitled to damages from Maxum for their property damages arising out of work performed by the subcontractors of Southwest.

On July 19, 2018, Maxum answered the plaintiffs' first supplemental and amending petition, generally denying the plaintiffs' allegations, and filed a dilatory exception raising the objection of prematurity. Maxum also asserted multiple affirmative defenses.[4] On March 18, 2022, the plaintiffs filed a motion for summary judgment against Maxum arguing that its commercial general liability insurance policies[5] issued to Southwest provided coverage for the plaintiffs' damages in this

---

[2] See La. R.S. 9:3141-3150.

[3] On March 21, 2019, State Farm filed a motion for summary judgment and a peremptory exception raising the objection of prescription against the plaintiffs. The trial court denied State Farm's exception on July 22, 2019. On October 28, 2019, this court reversed the trial court's judgment and granted the objection of prescription, dismissing State Farm from this case. See **Allen v. Southwest Builders, L.L.C.**, 2019-1008 (La. App. 1 Cir. 10/28/19), 2019 WL 5549415 (unpub'd writ action). On May 3, 2021, Southwest and Warren Vollenweider were dismissed with prejudice from this case after the plaintiffs settled their claims against them in arbitration.

[4] On December 11, 2018, the trial court granted Maxum's dilatory exception raising the objection of prematurity and the claims against Maxum were stayed pending arbitration between the plaintiffs and Southwest.

[5] We note that the Maxum policy was renewed multiple times with different policy numbers.

case. Specifically, the plaintiffs argued that their claims for damages were not excluded by the Maxum commercial general liability insurance policies because its language made it clear that coverage existed for consequential damages arising out of work performed by Southwest's subcontractors. Therefore, the plaintiffs argued that they were entitled to summary judgment. In support of their motion for summary judgment, the plaintiffs attached to their memorandum Maxum's commercial general liability insurance policies that it issued to Southwest.

In response, Maxum filed a cross motion for summary judgment, or alternatively, a partial motion for summary judgment against the plaintiffs. In its motion, Maxum stated that the commercial general liability insurance policies that it issued to Southwest provided no coverage for the plaintiffs' claims against Southwest for the following reasons:

> Plaintiffs' claims all arise out of [Southwest's] alleged breach of the contract or agreement to perform the work at issue, and therefore coverage [was] excluded under the Policies' breach of contract exclusion;

> Plaintiffs' claims for incomplete or underperformed work [were] not [for] "property damage" or "bodily injury," d[id] not constitute an "occurrence," and consequently [were] not covered under the Policies;

> The Policies "Property Damage," and "Damages to Your Work/Product" exclusions preclude[d] coverage for Plaintiffs' claims of (1) deficiencies in or damage to [Southwest's] work itself, (2) damage to particular property on which the work was performed, and (3) mental anguish and inconvenience;

> The Policies "Impaired Property" exclusion preclude[d] coverage for Plaintiffs' claims for delay damages, or damages arising from the loss of use and enjoyment of property; and

> The Policies exclude[d] coverage for alleged damages arising from mold.

In support of its motion, Maxum filed a memorandum attaching several exhibits, which included: (1) the plaintiffs' petition; (2) the plaintiffs' first supplemental and amending petition; and (3) Maxum's commercial general liability insurance policies.

4

On June 23, 2022, the trial court held a hearing on the cross motions for summary judgment. The trial court heard arguments from both parties and took the matter under advisement. On August 15, 2022, the trial court signed a judgment that denied the plaintiffs' motion for summary judgment, granted Maxum's motion for summary judgment, dismissed the plaintiffs' claims with prejudice, and denied as moot Maxum's alternative motion for partial summary judgment. The trial court signed reasons for judgment on July 25, 2022. In its reasons, the trial court stated, in pertinent part:

> [The] [p]laintiffs rel[ied] on the allegations in their pleadings and failed to produce any additional evidence to show that their claims [were] not barred by the [insurance] polic[ies] breach of contract exclusion. Further [the] [p]laintiffs failed to produce evidence to support their claim that they suffered any damages that [were] covered by the [insurance] policies. The Court finds [the] [p]laintiffs … failed to meet their burden of proof to show a genuine issue of material fact exist[ed] and [Maxum] [was] entitled to summary judgment as a matter of law.

Subsequently, the plaintiffs appealed the trial court's judgment. The plaintiffs argue that the trial court erred in denying their motion for summary judgment and erred in granting Maxum's motion for summary judgment.

## APPLICABLE LAW

Appellate courts review the granting of a summary judgment *de novo* using the same criteria governing the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966(A)(3); **Lucas v. Maison Insurance Co.**, 2021-1401 (La. App. 1 Cir. 12/22/22), 358 So.3d 76, 83-84; **Turner v. Rabalais**, 2017-0741 (La. App. 1 Cir. 12/21/17), 240 So.3d 251, 255, writ denied, 2018-0123 (La. 3/9/18), 237 So.3d 1193.

The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic

5

civil actions. See La. C.C.P. art. 966(A)(2). The purpose of a motion for summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. **Hines v. Garrett**, 2004-0806 (La. 6/25/04), 876 So.2d 764, 769 (*per curiam*). After an opportunity for adequate discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4).[6]

On a motion for summary judgment, the initial burden of proof is on the mover. See La. C.C.P. art. 966(D)(1); **Lucas**, 358 So.3d at 84. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, after meeting its initial burden of showing that there are no genuine issues of material fact, the mover may point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, summary judgment shall be granted unless the adverse party can produce factual evidence sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1).

The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents

---

[6] We note that La. C.C.P. art. 966(A)(4) was recently amended by 2023 La. Acts. No. 317, effective August 1, 2023.

to which no objection is made. In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether there is a genuine issue of material fact. **Collins v. Franciscan Missionaries of Our Lady Health System, Inc.**, 2019-0577 (La. App. 1 Cir. 2/21/20), 298 So.3d 191, 194, writ denied, 2020-00480 (La. 6/22/20), 297 So.3d 773. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. **Smith v. Our Lady of the Lake Hosp., Inc.**, 93-2512 (La. 7/5/94), 639 So.2d 730, 751; see also **Farrell v. Circle K Stores, Inc.**, 2022-00849 (La. 3/17/23), 359 So.3d 467, 478. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. **Smith**, 639 So.2d at 751.

Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment. **Green v. Johnson**, 2016-1525 (La. App. 1 Cir. 1/10/18), 241 So.3d 1188, 1191. An insurance policy is a conventional obligation that constitutes the law between the insured and the insurer, and the agreement governs the nature of their relationship. **Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc.**, 2006-1827 (La. 5/22/07), 958 So.2d 634, 638, citing La. C.C. art. 1983. An insurance policy is a contract, which must be construed employing the general rules of interpretation of contracts. **Supreme Services and Specialty Co., Inc.**, 958 So.2d at 638, citing La. C.C. arts. 2045-2057. If the insurance policy's language clearly expresses the parties' intent and does not violate a statute or public policy, the policy must be enforced as written. However, if the insurance policy is susceptible to two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted in favor of coverage. **Id.**

7

Liability insurance policies should be interpreted to effect, rather than to deny coverage. **Id.** However, it is well-settled that unless a statute or public policy dictates otherwise, an insurer may limit liability and impose such reasonable conditions or limitations upon its insureds. In these circumstances, unambiguous provisions limiting liability must be given effect. With that stated, we note that the insurer bears the burden of proving that a loss falls within a policy exclusion. **Id.** at 638-39.

## DISCUSSION

### The Plaintiffs' Motion for Summary Judgment

We first address whether the trial court properly denied the plaintiffs' motion for summary judgment. The plaintiffs, as the movers and as the insureds, had the initial burden of proving that their damages were covered by Maxum's commercial general liability insurance policies to Southwest. See La. C.C.P. art. 966(D)(1). The plaintiffs argue that the Maxum commercial general liability insurance policies cover consequential damages arising out of the work performed by the subcontractors that were hired by Southwest. The plaintiffs further argue that their claim for damages falls within the products-completed operations hazard provision (PCOH) of Maxum's commercial general liability insurance policies, which they argue do not exclude the work of Southwest's subcontractors.

Maxum counter-argues that the plaintiffs' claims for damages do not fall within the PCOH provision because all of their claims involve the work product itself instead of an injury or damage to a third party or other property. Maxum argues that the plaintiffs' argument is "based on a misapprehension of the relationship between the [p]olicies' 'work product' exclusions and PCOH coverage." Maxum further argues that the plaintiffs' claims for damages fail because their claim for faulty and/or incomplete work, as stated in their petition, concerns damages or

8

deficiencies in Southwest's work product, i.e., the home constructed by Southwest and its subcontractors. The plaintiffs do not claim damages to any other product or third party outside of the home itself. Therefore, Maxum argues that because the plaintiffs' damages do not involve any such other product or third party, their claims for coverage under the PCOH provision are without merit, and their motion for summary judgment should be denied as a matter of law.

In order to determine whether the trial court erred in finding that coverage did not exist for the plaintiffs' property damage claims, we analyze the language of the Maxum commercial general liability insurance policies. The policies provide, in pertinent part:

## SECTION I—COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

****

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
        (2) The "bodily injury" or "property damage" occurs during the policy period[.]

****

### 2. Exclusions

This insurance does not apply to:

****

### j. Damage To Property

"Property damage" to:

****

    **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

9

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*\*\*\*

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

## k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

## l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\*\*\*\*

## SECTION V — DEFINITIONS

\*\*\*\*

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or
**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

\*\*\*\*

**17.** "Property damage" means:

10

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it[.]

\*\*\*\*

**22.** "Your work":

**a.** Means:

> **(1)** Work or operations performed by you or on your behalf; and
> **(2)** Materials, parts or equipment furnished in connection with such work or operations.

In **Supreme Services and Specialty Co., Inc.**, 958 So.2d at 645, the Supreme Court clarified the coverage provided by the PCOH provision:

> Under the "work product" exclusion, the insured or its subcontractor becomes liable for damages to its work or its product caused by its faulty workmanship. Under the PCOH provision, damages, other than the faulty product or work itself, arising out of the faulty workmanship are covered by the policy. Stated differently, if a subcontractor's faulty electrical work caused the building to burn down before completion, the "work product" exclusion would eliminate coverage for the faulty electrical work performed by the contractor or subcontractor. However, the operations hazard coverage applies not to the faulty work, but damages arising out of the faulty work. Damage to real property arising out of the faulty work (fire damage) would not be excluded as it would be covered under the PCOH provision. The case *sub judice* involves a claim for damages to the work product itself, i.e.[,] the cracked concrete slab, not a claim arising out of the work and covered by the PCOH provision. Thus, the exception for the work performed on the insured's behalf by a subcontractor under the PCOH damage section of the policy simply is inapplicable to the present case. In other words, the PCOH provision only applies to those injuries which might occur as a result of the damaged product. In the instant case, there is no need to delineate the PCOH provision because there is no other product damaged or third person injured.

Based on the parties' arguments, this court must determine whether Maxum's commercial general liability insurance policies that contain a work product exclusion and a PCOH provision have any ambiguity when defective work is performed by a subcontractor. See **Supreme Services and Specialty Co., Inc.**, 958 So.2d at 643. In this case, the only evidence submitted by the plaintiffs in support of their position that the PCOH provision applies is the Maxum commercial general liability insurance policies. Based on this evidence alone, we find that there are genuine

11

issues of material fact as to whether the PCOH provision in the Maxum commercial general liability insurance policies apply to the plaintiffs' claims for damages. Thus, we agree with the trial court that there are genuine issues of material fact as to whether any of the plaintiffs' claims for damages involve injury to a third party or other property. Accordingly, after a *de novo* review, we find that the trial court properly denied the plaintiffs' motion for summary judgment.

## Maxum's Motion for Summary Judgment

We now address whether the trial court properly granted Maxum's cross motion for summary judgment. As the mover, Maxum had the initial burden of proof on the motion for summary judgment. See La. C.C.P. art. 966(D)(1). Maxum argues that the breach of contract exclusion in its commercial general liability insurance policies exclude any damages arising out of the breach of contract by Southwest. Specifically, Maxum argues that "[the plaintiffs'] claims for breach of contract, implied warranty of good workmanship, and other negligence carrying out the agreed-upon construction contract are wholly excluded from coverage by the clear and unambiguous language of the [insurance policies'] [b]reach of [c]ontract [e]xclusion." The breach of contract exclusion states the following:

### EXCLUSION-BREACH OF CONTRACT

This insurance does not apply to any claim or "suit" for breach of contract, whether express or oral, nor claims for breach of an implied in law or implied in fact contract, whether "bodily injury"[,] "property damage", "personal and advertising injury", or an "occurrence" is alleged and we shall have no obligation to indemnify or defend any insured for "bodily injury," "property damage," or "personal and advertising injury" or an "occurrence" directly or indirectly arising out of, caused by, or resulting from breach of contract.

This exclusion also applies to any additional insureds under this policy.

Louisiana jurisprudence interprets the breach of contract exclusion in a commercial general liability insurance policy similar to the trial court's holding in

12

this case. Courts in Louisiana have held that the breach of contract exclusion in a commercial general liability insurance policy unambiguously excludes from coverage all claims by an owner against a contractor or subcontractor for breach of contract or negligence from alleged defective or incomplete work. See **Provost v. Homes by Lawrence & Pauline, Inc.**, 2012-761 (La. App. 3 Cir. 12/5/12), 103 So.3d 1280, 1285, writ denied, 2013-0049 (La. 2/22/13), 108 So.3d 776 (homeowner's poor workmanship claims fell within the homebuilder's breach of contract exclusion in its commercial general liability policy); **Everett v. Philibert**, 2008-2270 (La. App. 1 Cir. 5/8/09), 13 So.3d 616, 620 (homeowner's negligence claims against homebuilder fell within the commercial general liability policy's breach of contract exclusion.)

Louisiana jurisprudence has consistently held that a commercial general liability policy that includes a breach of contract exclusion, such as the one in this case, unambiguously precludes any claims for coverage regarding any "bodily injury," "property damage," "advertising injury," "personal injury" or an "occurrence" or damages of any type. See **Everett**, 13 So.3d at 619. Furthermore, the facts of this case make it clear that all of the plaintiffs' allegations against Maxum are based on Southwest's alleged breach of its contractual duty to timely and properly construct the plaintiffs' home. Thus, all of the plaintiffs' property damage claims against Maxum are clearly precluded from coverage since they all arise from a breach of contract claim.

After a *de novo* review of the record, we find that as the mover, Maxum satisfied its burden of proof on the motion for summary judgment by showing that summary judgment should be granted in its favor. Therefore, the burden then shifted to the plaintiffs to present factual support evidencing that a genuine issue of material fact remained as to Maxum's breach of contract exclusion claim.

13

In opposition, the plaintiffs failed to produce any evidence to show that their claims were not barred by Maxum's commercial general liability insurance policies' breach of contract exclusion. Instead the plaintiffs relied on the allegations in their pleadings to support their claims that they suffered consequential damages that were covered by Maxum's commercial general liability insurance policies. If the non-moving party fails to produce sufficient factual support in its opposition which proves the existence of a genuine issue of material fact, La. C.C.P. art. 966(D)(1) mandates the granting of the motion for summary judgment. **Scott v. Performance Contractors, Inc.**, 2019-1225 (La. App. 1 Cir. 8/6/20), 2020 WL 4529633, *3 (unpublished).

Accordingly, after our *de novo* review, we find that the trial court correctly found that the plaintiffs failed to meet their burden of proving that a genuine issue of material fact existed as to Maxum's claim that the breach of contract exclusion in its policies excluded the plaintiffs' damages claims. Accordingly, we find that the trial court properly granted summary judgment in favor of Maxum dismissing the plaintiffs' claims with prejudice. We further find that the trial court correctly found as moot Maxum's partial motion for summary judgment.

## CONCLUSION

For these reasons, the trial court's judgment is affirmed. Appeal costs are assessed against the plaintiffs/appellants, Ladonna Allen wife of/and Gary Allen.

**AFFIRMED.**

14